### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| V. | * | CRIMINAL NO. PWG-19-0140 |
| JUSTIN ANTOINE | * | |

### MEMORANDUM AND ORDER

Currently pending are Defendant's Motion to Reconsider Order of Detention  (ECF No. 229) ("Motion") , the Government's Opposition to Motion to Reconsider Order of Detention (ECF No. 231) ("Opposition") and Defendant's Reply to Government's Response to Order of Detention (ECF No. 238) ("Reply").  In addition, the court ordered the production of the defendant's medical records from Central Treatment Facility ("CTF") where the defendant is detained (ECF No. 230), and those medical records (ECF No. 232 ) (under seal) have been reviewed by the court.  Thereafter, defendant filed his Reply and requested an additional seven days within which to provide the court with an expert's report interpreting the medical records and risks associated with the defendant's medical conditions.  Defendant has now provided that report to the court which contains the opinion of their expert in family medicine. (ECF No. 241-under seal)("Expert Report").  For the reasons stated below, the Motion (ECF No. 229)  is denied.

A detention  hearing was held in this case on July 8, 2019.  After both parties were fully heard, I detailed my reasons for issuing a detention order on the record at the hearing and I issued an Order of Detention summarizing those reasons (ECF No. 109).  Pursuant to 18 U.S.C. § 3142(f), a detention hearing may be reopened if the "judicial officer finds that information exists that was not known to the movant at the time of the [detention] hearing and

that has a material bearing on the issue whether there are conditions of release that will

reasonably assure the appearance of such person as required and the safety of any other person

and the community."  Defendant argues that the COVID-19 Virus Pandemic constitutes changed

circumstances warranting the defendant's release and, in particular, argues that the conditions of

confinement at CTF (which is part of the D.C. Jail complex) are unsafe, that he is at an increased

risk of contracting the virus, and the fact that he suffers from certain medical conditions

increases his risk of complications should he contract the virus.  Because concerns relating to the

COVID-19 pandemic were not present at the time of the defendant's original detention hearing,

the court agrees that § 3142(f) allows a reopening of the detention decision.

The Court "recognize[s] the unprecedented magnitude of the COVID-19 pandemic" and

acknowledges that it can constitute new information warranting a reconsideration of a detention

order.  United States v. Martin, Crim. No. PWG-19-140-13, ECF No. 209 at  4 (D. Md. Mar. 17,

2020).  Notwithstanding these circumstances, however, the decision whether to release an

individual pending trial still requires an individualized assessment of the factors identified in the

Bail Reform Act, 18 U.S.C. § 3142(g).  Id. at 5.  In that regard, I have reviewed the bases for my

detention order, and I have reweighed the factors under the Bail Reform Act in light of the

current public health emergency, the current COVID-19 situation at CTF where the defendant is

being held, the defendant's existing medical condition, and the defendant's proposed conditions

of release.  The record in this case regarding the offenses charged and the defendant's

background compel me to conclude that conditions of release cannot be fashioned to address

community safety, notwithstanding the potential risk of exposure to the virus that the defendant

faces while detained.  The court fully analyzed the §3142(g) factors at defendant's detention

hearing.  As noted in the court's detention order, and detailed on the record at the hearing by

both the government and the court, an analysis of these factors overwhelmingly supported a finding that detention was appropriate.

At the time of his detention hearing, the defendant was charged with narcotics and firearms offenses.  Since the original detention hearing, the defendant has been charged with additional offenses, including murder, in a Second Superseding Indictment.  The current charges include: 1) Count 1- Conspiracy to Distribute 28 grams of  Crack, 200 grams of Heroin and Cocaine; 2) Count 2- Discharging a Firearm Resulting in Death during a Drug Trafficking Crime; 3) Count 3-Possession with Intent to Distribute Heroin and Cocaine; and 4) Count 4- Possession of a Firearm during a Drug Trafficking Crime.   At the detention hearing, the government was entitled to a presumption in favor of detention pursuant to 18 U.S.C. §3142(e).   The nature of the offenses charged, and the specific facts relating thereto, were extremely troubling to the court and formed a significant basis for the court's conclusion that the defendant presented a risk of safety to the community. Although the defendant was not yet charged with murder at the time of  his detention hearing, the government's proffer included details of acts of violence by the defendant.  The details of the offenses charged are set forth in the government's Opposition, but of note is the fact that the defendant was a long term and significant member of a violent narcotics organization.  His alleged role in the offenses was substantial, as he was a key member of the organization and was responsible for distribution of large quantities of narcotics and multiple acts of violence in furtherance of the narcotics conspiracy.   Notably, the defendant is charged with the murder of Victim J.D. on May 8, 2018, alleged to have been committed in retaliation for a series of robberies and other acts that were negatively affecting the defendant's drug business and his standing in the organization.  Thereafter, on October 15, 2018, the defendant is alleged to have engaged in a gun

battle with J.D.'s associates, who were attempting to retaliate for J.D.'s murder.  The defendant

allegedly fired his gun during this exchange and an unarmed individual was struck. (ECF No.

231 at 1-2).

The weight of the evidence against the defendant is overwhelming and is supported by

wiretaps, undercover operations, and surveillance.  In addition, there was a seizure from the

defendant resulting from a search warrant obtained after wire intercepts revealed that the

defendant was bringing his gun and drugs to the Subway restaurant where he worked in

Baltimore City.  A search of the defendant's backpack revealed a loaded HK P30L .40 caliber

pistol as well as cash and quantities of cocaine, heroin, suboxone strips, Xanax pills, and an

oxycodone pill.   The gun seized from the defendant was later revealed to be a match to

ballistics evidence recovered from the nonfatal shooting noted above.   Further, the defendant

made admissions regarding his involvement in the offenses.  (ECF No. 231 at 1-3).  Specifically,

the government proffers that the defendant confessed to a confidential informant who was a

regular drug customer of his about killing J.D. because J.D. and his friends had been robbing the

defendant of his money and other property. As to the retaliatory shooting, the defendant admitted

to law enforcement after his arrest that he was involved in the shooting. (Id. at 6).  The court

notes, as has the government, that the "seriousness of Antoine's offense cannot be

understated."  (Id. at 5).  Although the defendant has a minimal record that is limited to a 2013

Rogue and Vagabond charge, his probation before judgment was closed as unsatisfactory.  In

addition, according to the government,  the defendant is not responsive to typical deterrents in

that, upon learning that his co-conspirators had been arrested, he continued his drug dealing,

noting that their arrests would result in additional business for those who had not been

arrested.  (Id. at 7).  .   Based upon the above, the court concluded at the time of the detention

hearing, by clear and convincing evidence pursuant to §3142, that there were no conditions of release which would reasonably assure the community's safety.  (ECF No. 109).

The defendant does not reargue the factors originally relied upon by the court.  Rather, the defendant focuses on the conditions at the D.C. Jail and his health condition which he argues puts him at greater risk of complications if he contracts the virus.  As this court has previously noted, the public health emergency created by COVID-19 is a significant concern for all those in detention facilities during this global pandemic.  The court is concerned for the defendant, and for all others both inside and outside of the detention facility.  These concerns, however, do not constitute a basis upon which to release an individual who this court has determined poses a threat to the safety of the community unless the court concludes that the conditions at the detention facility coupled with the defendant's medical conditions warrant a reconsideration of that conclusion.

The court is well aware that the conditions at the D.C. Jail are currently the subject of active litigation and are detailed in opinions of Judge Kollar-Kotelly of the United States District Court for the District of Columbia, who has directed that certain remedial actions be taken at the facility.  Banks v. Booth, Civ. No. CKK-20-849, 2020 WL 1914896 (D.D.C. Apr. 19, 2020) .  As noted by the government, as a result of that judicial oversight, comprehensive enhanced measures and procedural reforms have been put in place at the D.C. Jail and Judge Kollar-Kotelly continues to oversee the facility's implementation of those procedures.  (ECF No. 231 at 8-14).  The government further observes that conditions there have demonstrably improved and the number of positive cases of COVID-19 has been significantly reduced.  Indeed,  according to the government's Opposition, as of June 18, 2020,  the United States Marshals Service ("USMS") reported that no COVID-19 cases existed at the D.C. Jail.  (Id. at 10).   Given that the

defendant questions the government's assertions regarding positive COVID-19 cases at the D.C.

Jail, (ECF No. 238 at 4), the court inquired of the USMS as to the status of those cases.  The

USMS advised the undersigned that the General Counsel for the District of Columbia

Department of Corrections ("DOC") advised that, as of July 6, 2020, there were no positive

COVID-19 cases at DOC's correctional facilities, to include CTF where the defendant is

detained.  Further, DOC advised the USMS that, as of  June 14, 2020, the only individuals in

quarantine were new intakes arriving at DOC facilities who are quarantined for 14 days, in

addition to testing, out of an abundance of caution.  The court cannot conclude that the current

conditions at the jail are so unsafe so as to constitute a basis for reconsideration of the

defendant's detention order.

Nor is there any evidence of record that the defendant's medical condition is not being, or

cannot be, adequately addressed at the D.C. Jail.  Rather, the defendant's medical records clearly

establish that the D.C. Jail has been attentive to the defendant's needs.  The defendant had an

acute medical episode in mid-May involving blood clots in his lungs, and the defendant was first

admitted to the jail infirmary, but was shortly thereafter admitted to the Intensive Care Unit at an

outside hospital. According to the defendant, he continues to suffer from a severe heart

condition, chronic lung disease and other conditions.  (ECF No 238 at 2).[1]  According to the

defendant's Expert Report, the defendant is at high risk of developing COVID-19 because he is

being held in a jail setting and he is at a very high risk of adverse consequences if he is exposed

to the virus because he suffers from several medical conditions.  (ECF No. 241).  The court

---

[1] Because the defendant's Expert Report, which details all of the defendant's medical conditions
was filed under seal, the court will not further elaborate on the report or the details regarding
defendant's medical conditions in this opinion, but notes that it has considered all of the
conditions identified in the Expert Report. (ECF No. 241).

notes, however, that the Expert's Report does not address the conditions at the D.C. Jail

specifically, but rather relies upon the expert's experience regarding conditions at detention

facilities in general.   The current conditions at the D.C. Jail are not consistent with the expert's

observations.  Further, although the expert notes that the defendant may need follow up

appointments after his acute medical episode, the defendant does not assert that he is not

receiving necessary medical treatment.  While the court acknowledges that the defendant, as his

expert notes, suffers from multiple conditions that place him at greater risk of serious

complications if infected with the virus, that fact alone does not support a reconsideration of the

defendant's detention order given the reasons supporting that order as detailed above.  As noted

by the government, this court has denied many release motions filed by defendants who suffer

from significant health issues where those conditions did not warrant a reconsideration of a

detention order.  (ECF No. 231 at 1, App'x A).

The court has also considered the defendant's proposed conditions of release (ECF

No. 229 at 3)  and notes that those proposed conditions of release are the very same type of

conditions which were proposed, and rejected, at defendant's original hearing.  Even the strictest

of conditions of release to include a third party custodian (whether it is the defendant's cousin or

mother), electronic monitoring and related conditions are wholly inadequate to ensure the safety

of the community.  The court concludes now, as it did at the defendant's detention hearing, by

clear and convincing evidence, that there is no condition or combination of conditions which will

reasonably assure the community's safety**.**

Defendant's Motion also contains an alternative request for the defendant's temporary

release pursuant to 18 U.S.C. §3142(i) which allows for the temporary release of a defendant

once a determination has been made that such release is necessary for the preparation of his

defense.  Defendant argues that his inability to meet with counsel in person and his limited

opportunity to consult with counsel by phone has significantly curtailed his Sixth Amendment

right to counsel.  (ECF No. 220 at 10-11).  Given the current posture of this case, the court

cannot conclude that the defendant's temporary release is necessary for the preparation of his

defense.  The restrictions imposed at CTF regarding access to counsel are reasonable, necessary,

and temporary and, notably, the defendant's trial has been rescheduled to July 12, 2021.  (ECF

No. 231 at 22).  Given the trial date, defendant and his counsel have ample time within which to

prepare a defense.  And, as the court is aware, significant efforts and measures are being taken by

the court and the United States Marshals Service so as to facilitate communications and meetings

between counsel and their clients.  In his Reply, defendant also invokes the alternative basis for

release under §3142(i) which may be ordered for "another compelling reason" (ECF No. 238 at

1).  The court notes that it has herein broadly employed the analysis suggested by the Fourth

Circuit in United States v. Creek, No. 20-4251, Doc. 18 (4ᵗʰ Cir. Apr. 15, 2020) in considering

COVID-19 based requests for temporary release under §3142(i), although the Creek order did

not explicitly apply this analysis to other provisions of the Bail Reform Act.  See United States v.

Gallagher, SAG-19-479 (D. Md.), ECF No. 45 at 6-7. Specifically, the court has concluded that

the defendant's medical conditions and the risk of contracting COVID-19 does not rise to the

level of a "compelling reason" warranting the defendant's temporary release under 18 U.S.C.

§3142(i).

In conclusion, the defendant has not presented any new information that warrants a

reconsideration of my Order of Detention in accordance with 18 U.S.C. § 3142(f).  Based upon

the foregoing, the court concludes that the circumstances proffered by the defendant do not

constitute a basis upon which to release an individual who the court has determined poses a

threat to the safety of the community.  Accordingly, Defendant's Motion (ECF No.

229)  is denied.


Date:   7/8/2020                                              ____/s/_____
                                                             Beth P. Gesner
                                                             Chief United States Magistrate Judge